We'll hear argument next in United States v. Petrosi. Mr. Buchanan, though, you'll get us that letter by Friday? United States v. Petrosi, 181685. Good morning, Your Honors. May it please the Court. Kenneth Caruso. I'm CJA counsel for the appellant, Louis Petrosi. Your Honors, we rely first and foremost on the Yates-Griffin cases, which hold as follows. Where the government proceeds or prosecutes a crime on two legal theories and the jury returns a general verdict, reversal is required if any of the legal theories fails as a matter of law, and that's because the jury may have convicted the defendant for conduct that doesn't fall within the statutory definition of the crime. And that's exactly what happened here. The government argued securities fraud by means of misrepresentations and omissions, also market manipulation. But let's leave that aside for the moment. So they argued two theories of securities fraud. There was a general verdict. But it's perfectly clear, in my view, that Mr. Petrosi owed no duty to disclose. So I don't understand how you conceive of this as two separate theories. If he was making affirmative misrepresentations where the absence of additional information made them misleading, why isn't that a deceptive device or what have you under 10b-5? Why do you have to separate into it's only misrepresentations or only omissions? It's the government that separated them. The government never argued half-truths, which is what Your Honor is going to. Obviously, the theory of fraud by half-truths can apply under Section 10b, but the government never argued that. The government now says they argued that, but if you look at the record in the district court, you'll see that they never did. The indictment charges fraud by omission, failure to disclose the commissions. That's paragraph 11 of the indictment. But it was the misrepresentations that created the duty to disclose. Yes, but that's a half-truth argument, which was never made. And you can't argue a case that you can't uphold a conviction on a legal theory that wasn't presented to the jury. The government argued repeatedly undisclosed commissions, secret commissions. He failed to disclose. He told lies and he made omissions. They never even used the word half-truths. And Judge Kogan charged the jury on misrepresentations and omissions. He never used the word half-truths in connection with the securities fraud claim count. So I don't see how there can be an affirmance on the ground that, oh, what Petrosi really did was make half-truths. They argue that now, but they didn't argue that to the jury. The overall scheme here, which involved claiming to investors that they had personally invested and they failed to disclose their intent to sell their shares and the price was manipulated and they used nominees to buy and sell, that overall scheme, why isn't the failure to disclose a 10 percent, you call it a commission, some might call it a kickback. Some did. Yes, some did. Why isn't that just part of that overall picture, independent of the general duty to disclose commissions when that's all that is at issue? Well, the government argued in front of the jury that the most important thing that Petrosi did, the most important thing was to fail to disclose his commission. And I just don't think the government can have this big lumping of distinct legal theories that it betrays modeled thinking based on for which a man is now in prison. I mean, those are distinct theories. Misrepresentations. You could divide everything that was done here into separate theories. Every point that the government is making that was fraudulent into a separate theory. But the case law does this, Your Honor, and does this division. We rely on the Zuhr case, which Your Honor, Judge Walker wrote for the Court, where there were five theories of fraud. Not a recent case.  No, but still good law. There's no reason to think anything otherwise. Five theories of fraud. One was misrepresentation. Four involved omissions. And the Court said, we cannot affirm this. We cannot affirm. In order for appellant's convictions to stand, we must analyze the nature of the relationship between the brokers and their customers and determine whether the relationship gave rise to a duty to disclose the commissions. That's what I'm asking you to do here. All I'm asking is exactly what the Court did in Zuhr. Where the government proceeds on theories of both misrepresentation and omission, the conviction cannot stand unless there was a duty to disclose. And, again, I don't think it's even disputed here there was no duty to disclose because Mr. Petrosi was simply giving speeches to ---- May I ask you about a statement that you've made relating to the government's argument about half-truths? Yes. Because, look, there are only three real theories, right? Affirmative misrepresentations, half-truths, and omissions. Right. And during the jury summation, the government attorney, the AUSA, says you will be instructed, but I expect that Judge Kogan will tell you that under the securities laws, where a defendant omits to state means they don't state a material fact, which means what was said under the circumstance is misleading. That can support a verdict of guilty on the charge of securities fraud. Why is that not a statement about half-truths? And why, where, in Skelly and Zuhr and any other case that I'm familiar with, have we required the government or, for that matter, a judge, in the context of a jury instruction, to malve the words half-truth? Well, Your Honor, I have to start with perhaps an apology by saying I don't recall that specific comment or argument in front of the jury. But my reply brief at pages 6 to 7 lays out all of these statements that the government made in front of the jury in the summations, none of which refers to half-truths. And the judge, certainly Judge Kogan, didn't charge the jury on half-truths. Now, in these cases ---- What is a half-truth? You tell me. Half-truth is exactly what Judge Carney said, a statement that, standing alone, may be literally true, but because of the nondisclosure of other information, becomes misleading. These are important legal distinctions. And we have a man serving a prison sentence based on a theory that wasn't argued to the jury or submitted to the jury by Judge Kogan. And that cannot stand. So, you know, Your Honor is suggesting that these are perhaps just minor distinctions, but I think they're extremely important because they are distinct legal theories. Remind me, was this issue raised before the district court, this particular issue? Or was it? Yes, it was. So it's not a question of plain error? Not a plain error issue. I don't believe there are any plain error issues in this case. And, yes, it was argued in front of the district court. May I turn briefly now to the other issue that I'd like to raise, which is the jury instruction on willfully, right? Judge Kogan ---- Rejected your suggestion. Yes. I believe that there were two flaws with the jury instructions. One, it equates willfulness with intent to deceive or comes very close to that, and that's an error. And it was imbalanced because it informed the jury what the government was not required to prove with respect to Petrosian. So the United States v. Kaiser, a panel of this Court, seems to have approved of that language. No. Your Honor, most respectfully, Kaiser simply said that such language is not plain error. That's a big difference between saying a jury instruction is not plain error and a jury instruction is correct. And here you have de novo review. Now, may I explain why it can't possibly be correct to equate willfulness with intent to deceive? Intent to deceive is an essential element of every 10B claim, civil or criminal. In order to elevate the conduct from civil, that is, money damages, to criminal, that is, prison ---- So willfulness usually is, in United States v. Peltz, these other a line of cases that describe willfulness as you know in the securities context that what you're doing is wrong. You don't have to know about the specific provision that you're violating, but generally, usually as evidenced by efforts to conceal and so on, you know what you're doing is wrong. Why isn't it pretty clear here that he knew what he was doing was wrong and, you know, okay, if you intend to deceive, you know what you're doing is wrong? Well, because there has to be something more than intent to deceive in order to make this criminal and not just civil. And what is that something more? Well, I think you have to look at the Bryan case in the Supreme Court, which Judge Sand, in his instructions, works in. Bryan says the general rule, as a general matter, when used in a criminal statute, willfully means the government must prove that the defendant acted with knowledge that his conduct was unlawful. Knowledge that his conduct was unlawful. Not that he knew of a particular statute, but knowledge that his conduct was generally unlawful. Roberts. Thank you very much. We'll hear from the other side. May it please the Court. Mark Beeney for the United States. I represent the United States in the district court and also in the proceedings in Pennsylvania. The government requests that the Court affirm the jury's convictions against the defendant on all counts and in all respects. First, with respect to securities fraud, the district court properly found that Petrosi's security fraud conviction was based on a legally valid theory. Judge Kogan addressed the same argument that's being brought here. And he said, in particular, in his ruling with respect to the defendant's application for bail pending appeal, the defendant's argument regarding securities fraud, he was referring to, does not appreciate either the evidence or the way the case was tried. The government did not present parallel alternative theories of liability for defendant's conduct in promoting the Sunsea force field stock. The omissions the defendant claims would have been insufficient to convict him were part of a greater fraud in which the defendant presented himself as a member of an independent investment research firm. Defendant's entire presentation, which the evidence and trial showed he delivered four times using similar content and remarks, was designed to deceive investors into believing that he was providing independent advice. So your adversary's principal points, as I understand it, is that neither the government in its jury addresses nor the judge in his jury instructions actually reference this theory of half-truths, which is principally where we are in addition to, I think, affirmative misrepresentations. What's your response to that? Your Honor, I would note, as Your Honors have noted, that this half-truths is a legal term of art. It's a short form for referring to misleading statements that violate 10b-5. And I would note that the AUSA, who is trying the case with me, in her summation, said that you know the defendant made material false statements. What page are you reading from? Your Honor, this is in the appendix at pages 167 to 168. AUSA Albert said, you know the defendant made material false statements and made misleading material omissions because in every presentation he gave, every dealing with investors you have heard about over the course of this trial, Mr. Petrosi told lies. He told lies in big ways. He told lies in small ways. But all the lies he told have the convenient effect of getting investors to put their money into Sunsea. And, Your Honor, I would note that the government's comments in this regard go to element B of 10b-5, to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made in light of the circumstances under which they were made not misleading. And that's what a half-truth statement is, Your Honor. And I would note that even the cases upon which defense counsel relies, for example, United States v. Skelly, 442F3-94, specifically at page 97 notes that under 10b-5, under those provisions a seller or middleman may be liable for fraud if he lies to the purchaser or tells him misleading half-truths, but not if he simply fails to disclose information that he's under no obligation to reveal. Because a registered representative is under no inherent duty to reveal his compensation, otherwise truthful statements made by him about the merits of particular investments are not transformed into misleading half-truths, simply by the broker's failure to reveal that he's receiving added compensation for promoting a particular investment. So even the Skelly case acknowledges half-truths for making misleading statements. And here, the defendant's entire presentation was misleading, and for at least five reasons. First, the Wealth Research Institute, which was the defendant's purported company, operated as a vehicle to make Petrosi appear independent when he promoted the value of investing in Forcefield. Petrosi referred to the Wealth Research Institute in the plural, using pronouns like we and our, instead of I. In his presentations, Petrosi claimed that the mission of the Wealth Research Institute was to, quote, help people identify investments, to multiply wealth, and buy them at a fair price. And this is reflected in Government's Exhibit 103 and the General Appendix at page 60. Or the Government's Appendix, I should say, at page 60. Your Honor, this, or Your Honors, I should say, this presentation actually resonated with investors. In fact, some people speculated the Wealth Research Institute had many employees. There was a Forcefield investor named Nicholas Hakey. Okay. So that's a materiality point. But on the half-truths, you are saying that that was presented to the jury? Yes. Certainly by way of the Government's presentation as well as jury instruction? Yes, Your Honor. With respect to the jury instruction, I would note the appendix at pages 134 to 36, 136, 134 to 136, rather, and the Government's Appendix at pages 47 to 52. And in particular, I would note that the Government, or excuse me, the jury instructions included, regarding the securities fraud count, that first, that in connection with the purchase or sale of a security, the defendant did any one or more of three unlawful acts. I'm going to call these, going forward, three unlawful acts. They are as follows. One, employed a device, scheme, or artifice to defraud. Or two, made an untrue statement of a material fact or omitted to state the material fact, which made what was said under the circumstances misleading. That's the half-truth portion, Your Honor. And then it goes on, or the judge went on. Three, engaged in an act, practice, or course of business that operated or would operate as a fraud or deceit upon a purchaser or seller. And, Your Honors, I would just note that that is how the Government argued this case to the jury, that the evidence presented, the Wealth Research Institute itself, was deceptive. Would you move on, then, to the willfulness? Yes, Your Honor. Briefly. Very briefly. With respect to willfulness, I would note that the I would note, Your Honor, that while the instruction was not exactly the one the defendant requested, it correctly followed the law on willfulness by telling the jury that willfully means to act knowingly and purposefully with an intent to do something that the law forbids. In determining whether the Government acted willfully, the Government is not required to establish that the defendant knew he was breaking any particular law or rule. And what Mr. Caruso says is that that conflates the willfulness element under Section 32 with the intent element. Your Honor, I would note, while I agree that Kaiser said that it was not error, I do think that Your Honor's pointing to Kaiser is of some moment here, because immediately following this instruction was the instruction that in the context of securities laws, the intent to defraud means to act knowingly and with an intent to deceive. And I think that because it came right after the willfulness instruction, which means to act knowingly and purposefully and with an intent to do something that the law forbids, that it was a balanced instruction. It's your basic position, I guess, that the omission of the language with a bad purpose is not material here, because they — because of the language that knowingly and purposefully doing something that the law forbids. Yes, Your Honor. That is with a bad purpose. That is with a bad purpose. And so he simplified the instruction, but he did state that to the jury. Also, in this particular case, there was no doubt about willfulness. I think the evidence in this regard was overwhelming. Thank you very much. Thank you, Your Honor. Thank you, Your Honors. The counsel referred to the charge that the defendant requested, but I think it's important to note that this was a charge that both the government and the defense requested. Both sides wanted that charge. And then Judge Kogan watered it down. Counsel says he simplified it. But I suggest to you that he took out some very important things. He told the jury what the government was not required to prove with respect to Petrosi's knowledge of the law, but he did not tell the jury what the government was required to prove with respect to his knowledge of the law. Judge Sand has uniformly made this uniform. Eighty-five years on, after the 1934 act, we're still debating what the jury charge is. Judge Sand's charge, which Judge Kogan refused to give, is the tried and true method and brings uniformity to the cases. And I suggest that the Court should just stick with Sand. You can't tell the jury that the government's not required to prove his knowledge of a violation of a specific statute without also saying the government is required to show that he knew that his conduct was generally unlawful. That's what Brian says. And it's actually what Dixon says very early. How does that differ from knowingly doing something purposely that the law forbids? You know, it's unlawful. Here's why, I think, Judge. Because you can't say that the jury can find somebody did something with a bad purpose to disobey or disregard the law unless you also say that the government has to show that the defendant knew that his conduct was generally unlawful. This comes from Dixon, Judge Friendly, whose countenance is looking down on us. These violations would have been prevented if the defendant had acted with the aim of scrupulously obeying the rules, which would have necessarily involved correctly ascertaining the rules. The government has to show that the man, the defendant, had some general knowledge about violating the law. Otherwise, he can't have intentionally disobeyed it. Boilershop operations would be subject to revision under these circumstances where people are just in there making all sorts of wild statements over the phone to get investors to invest and, you know, based upon a knowledge that they're pumping a stock. That's the general knowledge that applies in a lot of these cases. So I think there has to be – I think you have to take Bryan into account. And the case couldn't state it more clearly. Willfully, in general, means the government must prove that the defendant acted with knowledge that his conduct was unlawful. And you might say generally unlawful, because that's the way the case refers to it later. Sotomayor, something that's unlawful is something that the law forbids, right? Yes. So it's basically the same thing, and that's what was charged. I don't think it's the same thing because it – and it's imbalanced, Your Honor. It's imbalanced by saying the government doesn't have – didn't have to prove the – that Petrosi had knowledge of a specific law being violated without also saying it has to have some general knowledge. Thank you very much.  Thank you all. Thank you, Your Honor. We'll reserve decision. We'll hear argument next in United States v. Brown et al. Michael Brown, Corey Canteen, Cary Vanderpool, William Bracey, Wendell Bell, and Jason – Mr. Moyes' matters on submission. So I would urge counsel to sit in order, if possible, of the presentation. And let's proceed. I'd also let the United States know, the government know, that although I've allotted 25 minutes, they do not have to use all 25 minutes. Okay.